IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KATHY ANDERSON LAMB                                                    PLAINTIFF

V.                                              CIVIL ACTION NO.: 1:08CV254-SA-JAD

BOONEVILLE SCHOOL DISTRICT                                      DEFENDANT

MEMORANDUM OPINION

Presently before the Court is Defendant's Motion for Summary Judgment [69]. After reviewing the motions, responses, exhibits, and authorities, the Court makes the following findings:

I.      Facts and Procedural Background

Plantiff, Kathy Lamb, was hired as a special education teacher for Anderson Elementary by Defendant Booneville School District in December 2007. The decision to hire Plaintiff was made by School Principal Beverly Hill, Special Education Director Lisa Kilgore, and School Superintendent Ricky Neaves. As a special education teacher, Plaintiff worked with eight students. These students spent part of their time in a regular classroom and part of their time in a special-education classroom. This method of instruction is referred to as inclusion. C.J., a special needs child with Autism, spent part of the school day in Plaintiff's classroom and part of the day in a regular classroom taught by Ginger Murphy.

On April 3, 2008, Plaintiff went to pick up C.J. from Murphy's classroom and was informed by Murphy that C.J. had been corporally punished for being disruptive and not following directions. Plaintiff objected to C.J. being paddled stating that "corporal punishment has not proven to be an effective means for dealing with the behavior of an autistic child." Murphy responded that the paddling was approved by Lisa Kilgore and Terri Nolen, an autistic consultant used by the District to observe classes with autistic children and provide input on ways teachers can work more

effectively with the children. Plaintiff replied, "I just can't believe that – the consultant said to corporally punish him after we only met two days ago to talk about alternative means of controlling behavior issues." Murphy informed Plaintiff that if C.J.'s behavior did not improve he would be taken out of her inclusion classroom. Plaintiff responded that although she would hate for that to happen, it might be the best alternative if they were going to use corporal punishment or methods that might teach him aggression.

When Plaintiff returned to her classroom, she sent an e-mail to Terri Nolen inquiring as to why she recommended C.J. be corporally punished. Nolen responded that she never recommended such discipline. Following the incident with Plaintiff, Murphy immediately went to Principal Hill's office and reported that Plaintiff yelled at her and condemned her in front of her classroom after notifying Plaintiff C.J. had been corporally punished. Principal Hill testified that Murphy was crying inconsolably for having been confronted in the manner she was by Plaintiff and was unable to continue teaching her classroom for part of the day.

Later that same day, Plaintiff was summoned to the principal's office . According to Plaintiff, Principal Hill was very upset that Plaintiff had talked to Murphy, and that she had emailed Nolen. Hill told Plaintiff that complaining to a fellow teacher about an issue Plaintiff did not agree with her about within earshot of other classrooms and students was very unprofessional, and that she should not have emailed Nolen. Hill further informed Plaintiff that corporal punishment worked well before Plaintiff was employed with the District. Plaintiff replied that she did not believe that to be the case, and it was a coincidence if it had, as corporal punishment and autism "do not go together." Plaintiff continued, stating that "children who are autistic don't understand corporal punishment." Hill, Kilgore, and Neaves all considered Plaintiff's conduct towards Murphy

2

objectionable as she raised her voice and condemned Murphy in the presence of others. The District maintains it took issue with the manner and place of Plaintiff's statements to Murphy, not the substance of her statements.

Plaintiff received a letter from Superintendent Neaves on April 7, 2008, informing her that her contract would not be renewed for the upcoming year. The decision not to renew Plaintiff was made by Principal Hill, Special Education Director Kilgore, and Superintendent Neaves, with the ultimate decision being made by Neaves. Principal Hill testified that although she initially desired to renew Plaintiff's contract, she decided not to renew Plaintiff after the incident with Murphy. Hill further stated that her "primary reason was that [Plaintiff] did not come to [her] office behind closed doors and sit down with [her] and even with the teacher that she had a problem with to discuss this in a professional manner. Instead, [Plaintiff] chose to yell, scream and holler at this teacher in the hallway within earshot of other classrooms and students." Kilgore asserts that she relied on the divider incident,[1] and that the Murphy incident served to confirm her decision not to renew Plaintiff was correct. Neaves also contends he made his decision following the divider incident. Neaves maintains he was not content with how Plaintiff conducted herself with faculty and administration. After receiving her non-renewal notice, Plaintiff confronted Murphy in her classroom with students present. Plaintiff handed Murphy the notice to read and accused Murphy of procuring her non-renewal.

---

[1] In late January 2008, Plaintiff moved an accordion room divider from her classroom to the gym. The District's fixed-assets-inventory policy requires that Plaintiff fill out a fixed-asset form and submit it to the office and await approval to move the item. Having learned Plaintiff removed the divider, Kilgore sent Plaintiff an e-mail expressing her disappointment that Plaintiff, without permission, moved the divider. Plaintiff responded, "I am equally disturbed and frustrated that I am being made to feel that I have done something wrong . . ." and that "it is rather unfair to write me such a negative email about this project when I have tried nothing but to make an environment conducive to learning." Plaintiff concluded, "[t]his has been blown way out of proportion and I can only assume you are having a bad day and this has pushed you over the edge." Both Kilgore and Neaves considered Plaintiff's emails inappropriate and discussed her non-renewal after this incident.

3

Plaintiff filed a Complaint and Amended Complaint on October 27, 2008, and May 22, 2009, respectively, alleging that the District did not renew her employment contract (1) in retaliation for exercising her rights under the First Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983; (2) in violation of the Age Discrimination in Employment Act (ADEA); and (3) in retaliation for allegedly complaining of illegal acts of her employer in violation of Mississippi public policy. The District has moved for summary judgment on all claims.

II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be

resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

III. Discussion

A. First Amendment Retaliation

Plaintiff alleges that she was unlawfully terminated in retaliation for exercising her First Amendment rights. Specifically, she contends that the District's non-renewal of her employment contract was in retaliation for expressing her view that corporal punishment was not an effective means of disciplining an autistic child. Plaintiff submits that her view was protected speech, and that the District's nonrenewal of her contract violated her rights under the First Amendment.

It is well established that "public employees do not surrender all their free speech rights by reason of their employment." Jordan v. Ector County, 516 F.3d 290, 294-95 (5th Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)); Williams v. Indep. Sch. Dist., 480 F.3d 689, 691 (5th Cir. 2007). Nevertheless, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 547 U.S. at 418, 126 S. Ct. 1951. For an employee's speech "to qualify for First Amendment protection, he must be speaking 'as a citizen on a matter of public concern.'" Nixon v. City of Houston, 511 F.3d 494, 497 (5th Cir. 2007) (quoting Garcetti, 547 U.S. at 418, 126 S. Ct. 1951).

"[B]efore asking whether the subject-matter of a particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of [her]

5

public job." Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008) (quoting Mills v. City of Evansville, 452 F.3d 646, 647-48 (7th Cir. 2006). The Fifth Circuit has held that "[a]n employee is not speaking as a citizen – but rather in his role as an employee – when he 'make[s] statements pursuant to [his] official duties.'" Nixon, 511 F.3d at 497 (quoting Garcetti, 547 U.S. at 421, 126 S. Ct. 1951).

"Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." Davis, 518 F.3d at 313. See e.g., Williams, 480 F.3d at 694 (holding that an athletic director's memo requesting information about the use of athletic funds was not protected speech because the information was needed to perform daily operations as an athletic director); Nixon, 511 F.3d at 498-99 (holding that a police officer's statement to the media was made pursuant to his official duties because speaking to the media was arguably one of an officer's job responsibilities). A formal job description is not dispositive in determining whether the employee spoke pursuant to his official duties. Williams, 480 F.3d at 692. Instead, even if the speech at issue is not required by the employee's job, the speech may not be protected if it was made while performing the job or to fulfill the job's responsibilities. See id. at 480.

Plaintiff contends her speech was not made pursuant to her official duties, as her job did not entail commenting on other teachers' discipline of students. However, Plaintiff's own deposition testimony disputes this assertion. Plaintiff testified that as C.J.'s primary teacher she viewed it as her role to give input on what was an appropriate and effective type of discipline. Further, Plaintiff agreed that her statement about the use of corporal punishment on C.J. was "just another statement that you might make in the course of your duties as a teacher . . . ." Finally, in Plaintiff's email to

6

Kilgore, she explains that her problem was not necessarily that C.J. was paddled, but that C.J. should have been brought to her when his behavior issues escalated in Murphy's classroom. In other words, as his primary teacher, Plaintiff felt it was her responsibility to deal with his behavioral issues as she saw fit.

Based on the record evidence, the Court finds that Plaintiff spoke as an employee in expressing her view that corporal punishment was not an effective means of discipline for an autistic child. Because Plaintiff spoke as an employee and not as a citizen, her speech regarding C.J.'s discipline is not protected by the First Amendment. Thus, the District is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

B. Age Discrimination

Plaintiff alleges that the District discriminated against her in violation of the Age Discrimination in Employment Act (ADEA) when she was replaced with a younger teacher. Plaintiff believes a younger teacher would be more compliant with the District's policy permitting corporal punishment of autistic children. Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

To prove an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., - - - U.S. - - -, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (June 18, 2009). "The burden of persuasion does not shift to the employer to show that it would have taken the same action regardless of age, even when a plaintiff has produced some evidence that age was a motivating factor in the decision." Id., 129 S. Ct. 2343. Because Plaintiff offers no direct

evidence of age discrimination, her claim is analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)[2]; Rachid, 376 F.3d at 309.

To set forth a prima facie case of discrimination under the ADEA, Plaintiff must show that "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age." Rachid, 376 F. 3d 309. A presumption of discrimination arises if Plaintiff establishes her prima facie case. Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007).

For summary judgment purposes, the District concedes Plaintiff has met her prima facie case. There is no dispute that Plaintiff was in the protected class of employees over the age of 40. 29 U.S.C. § 631(a). Nor does the District deny that Plaintiff was qualified, that her non-renewal constituted an adverse employment action, or that she was replaced with someone younger.

A prima facie case having arguably been established, the defendant must then articulate a legitimate, non-discriminatory reason for its decision to not renew the plaintiff. Berquist v. Washington Mut. Bank, 500 F. 3d 344, 349 (5th Cir. 2007). The District contends its reasons for not renewing Plaintiff's contract were the divider incident and the incident with Murphy. Deposition testimony evidences the three decision-makers made their decision not to renew Plaintiff as her conduct in these instances was unprofessional and disrespectful warranting her non-renewal. The

---

[2] Recently, the Supreme Court questioned the application of the McDonnell Douglas framework to ADEA actions. See Gross, 129 S. Ct. at 2349 n. 2 ("[t]he Court has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . utilized in Title VII cases is appropriate in the ADEA context.") Absent further instruction from the Supreme Court, this Court applies Fifth Circuit authority which holds that the McDonnell Douglas framework applies to ADEA actions. Rachid v. Jack in the Box, Inc., 376 F. 3d 305, 309.

Court finds the District has articulated a legitimate, nondiscriminatory reason for Plaintiff's non-renewal.

Plaintiff does not argue the reasons offered by the District for her non-renewal were untrue or would not warrant non-renewal. Instead, Plaintiff contends that Neaves explained to her the reason she was being non-renewed was due to financial reasons, and this inconsistent explanation serves as pretext. Even if the inconsistent explanation is probative of pretext, the Court finds Plaintiff's summary judgment evidence does not, in light of the "same actor-inference," create a requisite material fact issue. Brown v. CSC Logic, Inc., 82 F.3d 651 (5th Cir. 1996); see also West v. Nabors Drilling USA, Inc., 330 F.3d 379, 385 (5th Cir. 2003) ("It is possible for a plaintiff's evidence to permit a tenuous inference of pretext yet be insufficient to support a reasonable inference of discrimination."). When the same individuals are responsible for hiring and terminating an individual, who was already a member of the ADEA-protected class when hired, there is an inference that age was not the reason for the termination. See id. at 658 ("[c]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, [i]t hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job" (quoting Proud v. Stone, 945 F. 2d 796, 797 (4th Cir. 1991)(internal quotation marks omitted)).

Plaintiff was hired by Hill, Kilgore, and Neaves, and she was non-renewed by these same individuals less than five months later. Under these circumstances, an inference exists that the non-renewal was *not* motivated by age-related discrimination. The Court does not believe that the evidence in this case, considered as a whole, is sufficiently probative to save Plaintiff's ADEA claim from summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct.

9

2505, 91 L. Ed. 2d 202 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") That is, when all of the evidence is viewed in the light most favorable to the Plaintiff, the Court does not believe a reasonable factfinder could conclude that Plaintiff, given her conduct with respect to the divider incident and Murphy, would have been renewed but for her age. Indeed, Plaintiff testified that it was her belief she would still be working for the District had she not complained of corporal punishment. Plaintiff has not presented evidence sufficient to allow a reasonable trier of fact to conclude that age was the "but for" cause of the District's decision to non-renew Plaintiff. Gross, 129 S. Ct. at 2351. Accordingly, the District is entitled to summary judgment on Plaintiff's ADEA claim.

C.     McArn Claim

Plaintiff also has alleged a state law retaliatory discharge claim. Mississippi law is an employment-at-will state and follows the common law rule that " a contract for employment for an indefinite term may be terminated at will be either party." Kelly v. Miss. Valley Gas Co., 397 So. 2d 874, 874 (Miss. 1981). This means that the employer or the employee generally cannot be held liable in tort for firing an employee. However, in McArn v. Allied Bruce-Terminix, Inc., the Mississippi Supreme Court carved out a public policy exception to the employment-at-will doctrine. 626 So. 2d 603, 607 (Miss. 1993). McArn created a tort action in favor of an at-will employee who is discharged for refusing to participate in an illegal act or for reporting illegal acts of his employer to the employer or anyone else. Id. Under McArn, the illegal act is one which "warrant[s] the imposition of criminal penalties, as opposed to mere civil penalties." Hammons v. Fleetwood Homes, 907 So. 2d 357, 360 (Miss. 2004); see Wheeler v. B.L. Development Corp., 415 F. 3d 399, 404 (5th Cir. 2005).

Here, Plaintiff contends she was non-renewed because she reported and refused to participate in the corporal punishment of a severely disabled child. Plaintiff claims that the paddling of C.J. constituted misdemeanor child abuse. The District asserts that Plaintiff never complained that the paddling of C.J. was illegal and certainly did not complain that it was child abuse. Plaintiff merely informed Murphy and Hill that "corporal punishment has not been proven to be an effective means for dealing with the behavior of an autistic child." The District points to Plaintiff's email to Kilgore about the paddling incident wherein Plaintiff stated her position as follows:

> It wasn't that she didn't have an alternative to paddling. She just chose to throw away all of the programs the consultant, she and I had developed . . . . Mrs. Hill thought my problem was with her use of paddling but it wasn't. I knew they had paddled him earlier in the year. My problem was him being sent for not finishing his work when we had just determined his meds weren't working, his mother's boyfriend had moved in, he was having a new sibling, etc. On the very next day he was sent to the office instead of coming to me to let me walk with him, help him finish his work, etc.

Further, Plaintiff's email to Nolen stated:

> I know we are in Mississippi and it is accepted practice to use corporal punishment but when being paid to serve as a consultant for autism to give innovative ideas and suggestions to the staff, it does sets [sic] special education back quite a bit to resort to such an uninspired way of handling an autistic child's lack of motivation.

After reviewing the deposition testimony and emails, the Court finds Plaintiff's position on corporal punishment was never that it should be prohibited or that it was criminally illegal. In fact, Plaintiff states in her e-mail to Kilgore that she did not have a problem with Hill's use of paddling. Plaintiff took issue with Murphy and Hill not seeking her counsel before paddling C.J. Plaintiff further acknowledged in her e-mail to Nolen that corporal punishment is an accepted practice in Mississippi, but that she felt it was an "uninspiring way" to handle an autistic child. At no time did Plaintiff ever suggest or even imply corporal punishment of C.J. was child abuse. Plaintiff simply

11

believed there were more effective means of discipline than corporal punishment. Thus, the Court finds the District is entitled to summary judgment on Plaintiff's McArn claim.

IV.     Conclusion

Based on the foregoing analysis, the Court concludes the District's Motion for Summary Judgment [69] as to all Plaintiff's claims is GRANTED.

A separate order in accordance with this opinion shall issue this day.

SO ORDERED, this the 3rd day of February, 2010.

                                      **/s/ Sharion Aycock**
                                      **UNITED STATES DISTRICT JUDGE**